UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


CRISTIAN HUMBERTO JEREZ ANDRADE,    )
                                    )
              Petitioner,           )
                                    )
       v.                           )    Case No. 2:26-cv-69
                                    )
DONALD J. TRUMP, IN HIS OFFICIAL    )
CAPACITY AS PRESIDENT OF THE        )
UNITED STATES; PATRICIA HYDE, IN    )
HER OFFICIAL CAPACITY AS ACTING     )
BOSTON FIELD OFFICE DIRECTOR,       )
IMMIGRATION AND CUSTOMS             )
ENFORCEMENT, ENFORCEMENT AND        )
REMOVAL OPERATIONS; DAVID W.        )
JOHNSTON IN HIS OFFICIAL CAPACITY   )
AS VERMONT SUB-OFFICE DIRECTOR OF   )
IMMIGRATION AND CUSTOMS             )
ENFORCEMENT, ENFORCEMENT AND        )
REMOVAL OPERATIONS; TODD M.         )
LYONS, IN HIS OFFICIAL CAPACITY     )
AS ACTING DIRECTOR, U.S.            )
IMMIGRATION AND CUSTOMS             )
ENFORCEMENT; RODNEY SCOTT, IN HIS   )
OFFICIAL CAPACITY AS ACTING         )
COMMISSIONER FOR U.S. CUSTOMS AND   )
BORDER PROTECTIONS; KRISTI NOEM,    )
IN HER OFFICIAL CAPACITY AS         )
SECRETARY OF THE UNITED STATES      )
DEPARTMENT OF HOMELAND SECURITY;    )
MARCO RUBIO, IN HIS OFFICIAL        )
CAPACITY AS SECRETARY OF STATE;     )
PAMELA BONDI, IN HER OFFICIAL       )
CAPACITY AS U.S. ATTORNEY           )
GENERAL; AND GREG HALE,             )
SUPERINTENDENT, NORTHWEST STATE     )
CORRECTIONAL FACILITY—SAINT         )
ALBANS,                             )

              Respondents.

## OPINION AND ORDER

Before the Court is Petitioner Cristian Humberto Jerez Andrade's petition for a writ of habeas corpus under 28 U.S.C. § 2241.  ECF No. 1.  He seeks immediate release "on conditions this Court deems just and proper," or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days.  *Id.* at 15.  The Federal Respondents contend that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), and that his petition lacks merit and should be denied.  ECF No. 7.  The Federal Respondents, while "reserving all rights, including the right to appeal," have submitted an abbreviated response "in light of this Court's prior decisions in, for example, *De Luis v. Trump et al.*, No. 2:25-cv-921, 2025 WL 3763397 (D. Vt. Dec. 30, 2025) and *Piedrahita-Sanchez v. Turek et al.*, No. 25-cv-875-wks, ECF No. 13 (D. Vt. Nov. 14, 2025)."  ECF No. 7 at 2.

The Court held a status conference on March 16, 2026, and held a hearing on March 17, 2026.  For the reasons set forth below, the Court ORDERS a bond hearing.

## I.   Factual Background

In his Petition, Petitioner states that he is thirty-one years old, born and raised in Honduras but forced to flee in 2015 "after fearing for his life."  ECF No. 1 at 2; ECF No. 7 at 2.

Petitioner alleges that he arrived in the United States in or around January 2015.  ECF No. 1 at 6.  He states that he met his longtime girlfriend in 2019, and the couple had a child together on March 16, 2020.  *Id.*  "After several years living in Louisiana, in November 2025," his family made the difficult decision "to have Mr. Jerez Andrade move to Vermont where he was offered a more stable job."  *Id.*  Petitioner states that:

> On March 11, 2026, while at his residence in South Burlington, Vermont, officers from DHS including ICE surrounded Mr. Jerez Andrade's home while attempting to locate a different individual whom they believed resided at the property.  For approximately nine hours, ICE officers remained outside the residence before eventually obtaining a signed warrant for that other individual.  That individual was not present in the home and does not reside there.  Although the warrant did not name Mr. Jerez Andrade and there was no arrest warrant issued for him, DHS officers ultimately arrested Mr. Jerez Andrade at the residence.

*Id.* at 6-7.  Petitioner was brought to the Northwest Correctional Facility in Saint Albans, Vermont, and is currently detained there.  *Id.* at 7.

Petitioner states that he has "strong family ties in the United States and poses no danger to his community."  ECF No. 2 at 3.

Petitioner filed a Petition for Writ of Habeas Corpus in this Court on March 12, 2026.  ECF No. 1.  That same day, the Court issued a Temporary Restraining Order and Order to Show Cause which, among other things, ordered that "Petitioner shall

not be removed from the District of Vermont pending further order of this court."  The Federal Respondents filed their abbreviated response on March 13, 2026.  ECF No. 7.

The Court held a status conference on March 16, 2026, and then a full hearing on March 17, 2026.  Before the hearing on March 17, Petitioner submitted a "Memorandum in Support of Petitioner's Request for Immediate Release on Bond" that argued for the Petitioner's immediate release and attached exhibits, including many letters from Petitioner's family and members of the community, and photos of petitioner.  ECF No. 12.

At the March 17 hearing, the Court heard testimony from the Petitioner himself, as well as from José Jerez, the Petitioner's nephew.  The Court heard from them testimony about the Petitioner's fatherly bond with both his nephew and his son, and about his relationship with his longtime partner.  Both also spoke about his work ethic.  Both described the Petitioner's dedication to providing for his family.  Both Petitioner and his nephew also spoke about the day that Petitioner was detained, and his nephew described scene of ICE agents entering the house, picking him up off of the floor, slamming him and his uncle against the wall, throwing him back to the floor, handcuffing him while on the floor, taking his identification, pointing a gun at him, and then one ICE agent going into the attic before his leg fell through the roof and his weapon discharged maybe

five feet away from the nephew.  The Federal Respondents also submitted a record of criminal history instances for the Petitioner—which, as the Petitioner pointed out, were uncorroborated.  The Petitioner did admit to having one conviction that stemmed from an argument he had in 2020 with his longtime partner, and to which he pled guilty.  The conviction may have been for domestic abuse / battery.  The Petitioner did not remember the exact charge to which he pled.  Though there were some indications of warrants having been issued, perhaps one for stalking/intimidation and another for a traffic violation nonappearance, neither party knew whether the warrants were active.

## II.   Jurisdiction and Legal Standard

District courts have jurisdiction under 28 U.S.C. § 2241 to hear claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  Petitioners have the burden to demonstrate that their detention violates the Constitution or federal law. *See, e.g.*, 28 U.S.C. § 2241(c)(3); *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).[1]

---

[1] In this case, Respondents do not argue that Petitioner failed to exhaust his administrative remedies.  Other district courts have addressed, and excused, exhaustion in similar circumstances.  *See, e.g., Lopez Benitez v. Francis et al.*, No.

### III. <u>Discussion</u>

Petitioner requests immediate release "on conditions this Court deems just and proper," or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days. ECF No. 1 at 15. The Federal Respondents contend that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), and that his petition lacks merit and should be denied. The Federal Respondents agree that the issues raised with regard to Section 1225 are similar to those this Court decided in *Piedrahita-Sanchez v. Turek et al*, No. 2:25-cv-875, (D. Vt. Nov. 14, 2025), ECF No. 13, and *De Luis v. Trump et al.*, No. 2:25-cv-921, 2025 WL 3763397 (D. Vt. Dec. 30, 2025). The Federal Respondents reserve their right to disagree with the Court's holding in those cases, and state that they are reserving their right to appeal. ECF No. 7 at 2 ("While respectfully disagreeing with the Court's prior decisions, Federal Respondents acknowledge that, should the Court adhere to its reasoning in those decisions, the Court would likely reach the same outcome in this case. Thus, in the interest of judicial economy, and to expedite the Court's consideration of this matter, Federal Respondents hereby rely upon and incorporate by reference the legal arguments they presented in

---

1:25-CV-05937-DEH, 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, *37-41 (S.D.N.Y. Aug. 13, 2025).

*Piedrahita-Sanchez* and submit that the Court can decide this matter without further briefing and without oral argument.").

Accordingly, the Court adopts the same analysis regarding the Section 1225 issues in this case as in those cases, reproduced below.

**A. Basis for Detention**

As is relevant here, two statutes principally govern the detention of noncitizens who do not have an order of removal: 8 U.S.C. §§ 1225 and 1226.  Section 1225 provides for inspection of "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States[,]" 8 U.S.C. § 1225(a)(3), where an "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States Waters)." *Id.* § 1225(a)(1).  Subject to certain exclusions the parties do not argue are applicable here, detention is mandatory under Section 1225:

> In the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

7

*Id.* § 1225(b)(2)(A).

Section 1226(c) governs the detention of noncitizens apprehended within the United States on criminal grounds. Section 1226(a) is a catchall provision that governs the detention of any other noncitizen apprehended by immigration enforcement and is generally understood to apply to noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).[2] Section 1226(a) creates a statutory right to a bond hearing before an immigration judge, but § 1225(b) and § 1226(c) call for mandatory detention. *Id.* at 302, 305-06.

This July, the Department of Homeland Security ("DHS") adopted a new interpretation of Section 1225 of the Immigration and Nationality Act (INA), one that Federal Respondents advance

---

[2] The Court notes that the Government has argued that *Jennings* supports its interpretation of Sections 1225 and 1226, because it states that 1226 applies to "certain aliens already in the country[,]" and the word "certain" means that it is not the exclusive source of detention authority for certain aliens who are already in the country. Rather, the Court considers the *Jennings* opinion to lend support to Petitioner's reading of the statutes: at most, the opinion is ambiguous. *See Jennings*, 583 U.S. at 288 ("Even once inside the United States, aliens do not have an absolute right to remain here. For example, an alien present in the country may still be removed if he or she falls 'within one of more…classes of deportable aliens.' § 1227(a). That includes aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission. *See* §§ 1227(a)(1), (2). Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal.").

in this case.  *See Martinez v. Hyde*, No. 25-11613-BEM, 2025 U.S. Dist. LEXIS 141724, 2025 WL 2084238, at *12 (D. Mass. July 24, 2025) (describing "novel interpretation").  In September, the BIA issued a ruling in a case called *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which held that all noncitizens who enter the United States without inspection are "applicants for admission" who are "seeking admission" within the meaning of § 1225(b), no matter how long they have lived in the United States.

In this case, Petitioner has been detained pursuant to 8 U.S.C. § 1225(b)(2).  It is the Federal Respondents' position that, notwithstanding his roughly 10-year presence in this country, Petitioner remains an "applicant for admission" who is "seeking admission" and is subject to detention under Section 1225(b)(2).  As an initial matter, the Court notes that other district courts in this Circuit have consistently rejected the Federal Respondents' proposed, broad interpretation of § 1225(b)(2)(A).  *See, e.g., Benitez v. Francis*, No. 25-cv-5937 (DEH), 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, at *25 (S.D.N.Y. Aug. 13, 2025); *Samb v. Joyce*, No. 25-cv-6373, 2025 U.S. Dist. LEXIS 161109, 2025 WL 2398831, at *3 (S.D.N.Y. Aug. 19, 2025); *Gonzalez v. Joyce*, No. 25-cv-8250, 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025); *Hyppolite v. Noem*, No. 25-cv-4304, 2025 U.S. Dist. LEXIS 197628,

2025 WL 2829511, at *8-12 (E.D.N.Y. Oct. 6, 2025); *J.U. v. Maldonado,* No. 25-cv-04836 (OEM), 2025 U.S. Dist. LEXIS 191630, 2025 WL 2772765, at *5-9 (E.D.N.Y. Sept. 29, 2025); *Perez v. Francis*, No. 25-cv-8112 (JGK), 2025 U.S. Dist. LEXIS 219356, at *5-7 (S.D.N.Y. Nov. 6, 2025); *Ortiz v. Freden*, No. 25-cv-960-LJV, __ F. Supp. 3d__, 2025 U.S. Dist. LEXIS 217654, 2025 WL 3085032, at *36-37 (W.D.N.Y. Nov. 4, 2025).  Moreover, the vast majority of cases across the country have held similarly, with a few exceptions that the Federal Respondents have previously cited.[3]

The Court begins its analysis with the statutory text and plain meaning.  *See United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016).  First, the title of Section 1225 is: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." 8 U.S.C. § 1225 (emphasis added).  The word "arriving" in the title indicates that it does not refer to noncitizens present already.  *See Pizarro Reyes*, No. 25-cv-12546, 2025 U.S. Dist. LEXIS 175767, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025)

---

[3] The Court has read and considered *Chavez v. Noem*, No. 25-cv-2325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Vargas Lopez v. Trump,* 2025 U.S. Dist. LEXIS 192557, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Oliveira v. Patterson*, No. 6:25-cv-01463, 2025 U.S. Dist. LEXIS 218128 (W.D. La. Nov. 4, 2025); and *Pena v. Hyde*, No. 25-cv-11983, 2025 WL 2108913 (D. Mass. July 28, 2025) and does not find them persuasive in this context.

("the use of 'arriving' to describe noncitizens strongly indicates that the statute governs the *entrance* of noncitizens to the United States.  This reading is bolstered by the fact that 1225 clearly establishes an inspection scheme for when to let noncitizens into the country.").

Section 1225(b)(2) provides that "in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).  Under section 1225(a)(1), an "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission."  *See also Ascencio-Rodriguez v. Holder*, 595 F.3d 105, 108 n.3 (2d Cir. 2010) ("Aliens not admitted are treated as 'applicants for admission.'" (citing 8 U.S.C. § 1225(A)(1)).  Elsewhere, the INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).

11

As for the meaning of "seeking admission," this Court finds that the likely meaning is those noncitizens presenting themselves at the border, or who were recently apprehended just after entering.[4]  However, to the extent the statute may be considered ambiguous as to whether it means either seeking the legal right to enter (Federal Respondents) or the act of entering the country at the border or otherwise (Petitioner), the Court turns to the canons of statutory construction.  Once again, this Court agrees with many other courts that: if all "applicant[s] for admission" also are "seeking admission," then the words "seeking admission" would be surplusage.  *Ortiz v.*

---

[4] As the district court in *Benitez v. Francis* analogized:

> This understanding accords with the plain, ordinary meaning of the words "seeking" and "admission." For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to Mr. Lopez Benitez, because he has already been residing in the United States for several years.

*Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, at *21 (S.D.N.Y. Aug. 13, 2025).

*Freden*, No. 25-cv-960-LJV, __ F. Supp. 3d__, 2025 U.S. Dist. LEXIS 217654, 2025 WL 3085032, at *15-16 (W.D.N.Y. Nov. 4, 2025) ("After all, Congress simply could have said 'if the examining immigration officer determines that *an applicant for admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained.'" (emphasis in original)).

This Court also agrees with other district courts who have observed that this reading is supported by the other subparagraphs in Section 1225(b)(2). Subparagraph (B) provides that Section 1225(b)(2)(A) "shall not apply to an alien…who is a crewman" or "who is a stowaway" and subparagraph C specifies a return procedure in the case of an alien described in subparagraph (A) who is "arriving on land." 8 U.S.C. § 1225(B), (C). The carve-outs for various means of initial arrivals into the United States suggests that those covered by Section 1225(b)(2) who are "seeking admission" refer to those individuals presenting themselves at the border (or those who have not yet effected entry, such as the noncitizen who succeeded in making it 25 yards into U.S. territory in *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)).

Similarly—and, again, following the analysis of other courts—the Court observes that the Federal Respondents' interpretation of Section 1225(b)(2) would render the 2025 Laken Riley Act—which amended 8 U.S.C. § 1226(c)—without meaning.

13

*See, e.g., Ortiz v. Freden*, No. 25-cv-960-LJV, __ F. Supp. 3d__, 2025 U.S. Dist. LEXIS 217654, 2025 WL 3085032, at *17-18 (W.D.N.Y. Nov. 4, 2025).  It is unlikely that Congress passed the Laken Riley Act to add Subsection (c)(1)(E) to the mandatory detention scheme under Section 1226(c) if those individuals were already covered by mandatory detention under Section 1225(b)(2).

In support of its position, the Federal Respondents point to the legislative history of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which streamlined the distinct deportation and exclusion proceedings into "removal proceeding."  The Federal Respondents argue that Congress sought to discard the former regime and eradicate detention discrepancies.  However, this Court shares the skepticism of other district courts faced with the argument that Congress was seeking to completely overhaul the systems of detention as well. *See Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 U.S. Dist. LEXIS 179594, 2025 WL 2637503, at *30-32 (N.D. Cal. Sept. 12, 2025); *see also Zumba v. Bondi*, No. 25-cv-14626 (KSH), 2025 U.S. Dist. LEXIS 190052, 2025 WL 2753496, *30 n.5 (D.N.J. Sept. 26, 2025) ("The Court need not consider the legislative history because it finds the statute is clear and simply notes that Congress' stated goal was to put certain noncitizens seeking entry on more equal footing with noncitizens who were present in the United States with respect to their <u>removal proceedings</u>. The cited

14

legislative history does not suggest that Congress also intended to subject all noncitizens who entered the United States without inspection to mandatory detention during their removal proceedings." (emphasis in original)); *see also Romero v. Hyde*, No. 25-11631-BEM, __ F. Supp. 3d__, 2025 U.S. Dist. LEXIS 160622, 2025 WL 2403827, at *29 (D. Mass. Aug. 19, 2025)(Congressional intent was not expressed as to *detention* pending the outcome of the immigration proceedings, and "[r]ealistically speaking, if Congress's intention was so clear, why did it take thirty years to notice?").

**B. Constitutional Deprivation**

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), sets out a three-part test that the Second Circuit has applied when determining the adequacy of process in the context of civil immigration confinement. *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Under *Mathews*, the three factors are: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

15

On the first prong, Petitioner's private interest in "freedom from imprisonment" is strong. *See Velasco Lopez*, 978 F.3d at 851 ("the most significant liberty interest there is—the interest in being free from imprisonment." (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Petitioner "was detained without any pre-detention, individualized determination as to whether he posed a flight risk or any risk of dangerousness" nor is there any indication that "there was any material change in circumstances that triggered [Petitioner's] sudden arrest and detention"; rather, "it appears [Petitioner] was detained simply because" he was residing at a house that ICE officers believed another individual, for whom they had a warrant, resided at. *Hyppolite v. Noem,* No. 25-cv-4304, 2025 U.S. Dist. LEXIS 197628, 2025 WL 2829511, at *34-35 (E.D.N.Y. Oct. 6, 2025) (case in which the petitioner was detained when he appeared for a previously calendared conference in immigration court).

On the second prong, the Court weighs the risk as high because "[t]he purpose of the bond hearing employed when the government seeks to exercise its discretion in detaining a noncitizen under § 1226(a) is to provide procedures which will better ensure that people who are, in fact, a risk of flight or a danger to the community are the people [who] are ultimately detained." *Id.* Here, there were no procedural safeguards in the form of a bond hearing, and there are no planned procedural

safeguards.[5]  *Zumba v. Bondi*, No. 25-cv-14626 (KSH), 2025 U.S. Dist. LEXIS 190052, 2025 WL 2753496, *29-30 (D.N.J. Sept. 26, 2025) ("the first and second *Mathews* factors weight heavily in petitioner's favor, as she has been deprived of her liberty, erroneously subjected to mandatory detention under § 1225 during her removal proceedings, and denied due process protections, including the right to seek bond.").  As there has been no bond hearing, apparently no one has assessed Petitioner's risk of flight and dangerousness.  The lack of procedure contributes to an increased risk of erroneous deprivation.  *See, e.g., Black v. Decker*, 103 F.4th 133, 152, (2d Cir. 2024) *reh'g en banc denied,* 2025 U.S. App. LEXIS 27912, 2025 WL 2989687 (2d Cir. Oct. 24, 2025) (in considering the category of people subject to mandatory detention under the former version of Section 1226(c), the Second Circuit held that "the almost nonexistent procedural protections in place for section 1226(c)" contribute to a "markedly increased…risk of an erroneous deprivation of [p]etitioners' private liberty interest" where the only procedural protection available was a hearing to contest whether

---

[5] The Federal Respondents have previously observed that the detention under Section 1225 is not indefinite: the Petitioner could be granted temporary parole under §§ 1225(b)(1) or (b)(2) for "urgent humanitarian reasons or significant public benefit" or the Petitioner's detention could end once removal proceedings have concluded.  Regardless, erroneous deprivation in the meantime will have no procedural protections.

17

the petitioners in fact committed a crime that makes them subject to mandatory detention under that statute).

On the third prong, on the record currently before the Court, the Federal Respondents do not have a significant interest in Petitioner's continued detention.  It is not authorized by 8 U.S.C. § 1225 and it serves no legitimate purpose.  *See Lopez Benitez v. Francis et al.*, No. 1:25-CV-05937-DEH, 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588, *36 (S.D.N.Y. Aug. 13, 2025) ("The Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose such as ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." (cleaned up)).  On the other hand, the Court recognizes that there is a governmental interest in ensuring persons "do not commit crimes or evade law enforcement"—as such, a bond hearing will "permit the Immigration Court to consider those interests while also safeguarding Petitioner's significant private interests in personal liberty and due process."  *Adonay E.M. v. Noem*, No. 25-cv-3975, 2025 U.S. Dist. LEXIS 222247 at *26 (D. Minn. Nov. 12, 2025).

Accordingly, the Court finds that Petitioners' due process rights were violated.  *See Gonzalez v. Joyce,* No. 25-cv-8250, 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *4 (S.D.N.Y.

18

Oct. 19, 2025) ("Because Respondents' ongoing detention of [Petitioner] with no process at all, much less prior notice, no showing of changes circumstances, or an opportunity to respond, violates his due process rights,[] the Petition must be granted." (internal quotation marks and citation omitted)).

### IV.   Remedy

Generally, writs of habeas corpus are used to request release from custody. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). A habeas court has "the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779-80 (2008) (noting that at "common-law habeas corpus was, above all, an adaptable remedy."). When faced with similar habeas petitions, some courts in this Circuit and outside have ordered a bond hearing or, alternatively, immediate release. *See, e.g., Perez v. Francis*, No. 25-cv-8112 (JGK), 2025 U.S. Dist. LEXIS 219356, at *5-7 (S.D.N.Y. Nov. 6, 2025) ("The Government shall ensure that the petitioner receives a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days of this Memorandum Opinion and Order; if no hearing is held by that deadline, the Government shall immediately release the petitioner."); *Ortiz v. Freden*, No. 25-cv-960-LJV, __ F.Supp.3d__, 2025 U.S. Dist. LEXIS 217654,

2025 WL 3085032, at *36-37 (W.D.N.Y. Nov. 4, 2025) ("[T]he [c]ourt ORDERS the respondents to provide Alvarez Ortiz with an individualized bond hearing before an immigration judge **within seven calendar days of the date of this decision and order** at which the government shall bear the burden to demonstrate, by clear and convincing evidence, that he is a danger to the community or a flight risk. . . . If the respondents fail to provide such a hearing within seven calendar days, they shall immediately release Alvarez Ortiz.").  Some other district courts have simply ordered immediate release.  *See, e.g., Hyppolite v. Noem,* No. 25-cv-4304, 2025 U.S. Dist. LEXIS 197628, 2025 WL 2829511, at *44 (E.D.N.Y. Oct. 6, 2025) ("Hyppolite's Amended Petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED.  At the hearing on September 29, 2025, the Court ordered Respondents to immediately release Hyppolite from custody, and was later informed by Respondents' counsel that he was released that same day."); *Gonzalez v. Joyce*, No. 25-cv-8250, 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025) (habeas petition granted and respondents ordered to immediately release petitioner from custody and certify compliance with a filing the next day); *Benitez v. Francis*, No. 25-cv-5937 (DEH), 2025 U.S. Dist. LEXIS 157214, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *J.U. v. Maldonado*, No. 25-cv-04836 (OEM), 2025 U.S. Dist. LEXIS 191630,

2025 WL 2772765, at *31 (E.D.N.Y. Sept. 29, 2025) ("Respondent is ORDERED to immediately release Petitioner from custody."). That has also been the approach taken by this Court. *See, e.g., Reynoso De Luis v. Trump, et al.*, No. 25-CV-921, 2025 WL 3763397, at *2 (D. Vt. Dec. 30, 2025); *Acosta Yupangui v. Hale, et al.*, No. 25-CV-884, 2025 WL 3207070 (D. Vt. Nov. 17, 2025); Opinion and Order, *Piedrahita-Sanchez v. Turek, et al.*, No. 25-CV-875 (D. Vt. Nov. 14, 2025) (ECF Doc. No. 13).

The Court notes that, as the Federal Respondents acknowledged in their pleadings and as the Petitioner asserts in his petition, some other district courts have simply ordered immediate release. *See, e.g.,* Order, *Lopez-Niz v. Hale, et al.*, No. 25-CV-912 (D. Vt. Dec. 30, 2025); *Hyppolite v. Noem,* No. 25-cv-4304, 2025 U.S. Dist. LEXIS 197628, 2025 WL 2829511, at *44 (E.D.N.Y. Oct. 6, 2025) ("Hyppolite's Amended Petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED. At the hearing on September 29, 2025, the Court ordered Respondents to immediately release Hyppolite from custody, and was later informed by Respondents' counsel that he was released that same day."); *Gonzalez v. Joyce*, No. 25-cv-8250, 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025) (habeas petition granted and respondents ordered to immediately release petitioner from custody and certify compliance with a filing the next day); *Benitez v. Francis*, No. 25-cv-5937 (DEH), 2025 U.S.

21

Dist. LEXIS 157214, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *J.U. v. Maldonado*, No. 25-cv-04836 (OEM), 2025 U.S. Dist. LEXIS 191630, 2025 WL 2772765, at *31 (E.D.N.Y. Sept. 29, 2025) ("Respondent is ORDERED to immediately release Petitioner from custody.").

Here, the Federal Respondents ask the Court to, if it follows its previous cases, order the same relief it ordered in *Piedrahita-Sanchez*: a bond hearing.  ECF No. 7 at 2. Petitioner, on the other hand, seeks immediate release "on conditions this Court deems just and proper," or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days.  ECF No. 1 at 15.  For the reasons set forth above, the Court orders a bond hearing.

The Court considered Petitioner's position that he should be immediately released, and considered whether it would make sense to order release of the Petitioner pending the bond hearing.  However, based upon the information that was provided at the hearing held on March 17, 2026, the Court could not make a determination that this case presented considerations that are "extraordinary circumstances" that make immediate release "necessary to make the habeas remedy effective."  *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001).[6]

--------

[6] *Mapp* concerned the standards for granting bail (even in cases challenging detention by the Immigration and Naturalization

22

Accordingly, the Court orders a bond hearing.  However, the Court is not separately ordering release pending the bond hearing.

### V. Conclusion

For the foregoing reasons, the Federal Respondents are ORDERED to hold an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) for Petitioner, within five (5) business days.  The hearing will be held by March 24, 2026.

This Court also ORDERS a hearing for seven business days from this date, March 26, 2026, to be held in this Court, at which time it will inquire as to whether a hearing has been held pursuant to Section 1226(a), and whether Petitioner has been released.  At that hearing, the parties shall be prepared to address the remaining substantial constitutional issues

---

Service) pending a final decision on a habeas petition.  Here, the Court is in the position of deciding the habeas petition upon its merits as to the 1226 issue—and having already rejected the Federal Respondents' identical legal position in other cases—but also, having fashioned relief particular to the circumstances of this case (ordering a bond hearing), having the chance to address Petitioner's circumstances in the meantime. Here, based on the unique considerations at issue in this case, and the abbreviated timeline that the Federal Respondents have to hold a bond hearing, the Court does not find that immediate release, whether or not pursuant to bail, would be appropriate. It may be that the Petitioner may renew his request for release depending upon further developments in the case.

23

implicated in this case.  This hearing will be on the full habeas petition.

In addition, this Court ORDERS that Paragraph 3 of its TRO remains in effect.  ECF No. 5.  This Court continues to ORDER that Petitioner shall remain detained at the Northwest Correctional Facility, and shall not be moved out of state, *to the extent that he remains detained at all*.  Should the Federal Respondents release petitioner after the bond hearing, that would not violate the TRO. Finally, because the parties have informed the Court that the master calendar hearing is to be in Massachusetts and Petitioner's attorney has stated that he will be present at that hearing, the Court excepts any transportation to and from that hearing (and the bond hearing, should it be combined with the other hearing) from the requirements of the TRO.

Dated at Burlington, in the District of Vermont, this 17th day of March 2026.

/s/ William K. Sessions III
Hon. William K. Sessions III
United States District Court

24